IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:22-cv-00048-D

**Jack Anthony Williams,**

        Plaintiff,

v.

**Sig Sauer, Inc., &**
**Wintrod Enterprises, Inc.,**

        Defendants.

**Order**

      Jack Anthony Williams sued Defendants Sig Sauer, Inc., and Wintrod Enterprises, Inc., for injuries he suffered when his firearm unexpectedly discharged. D.E. 16. In its motion to dismiss Williams's amended complaint, Sig Sauer alleges that this court lacks personal jurisdiction over it. D.E. 21. Williams disagrees and has asked the court for permission to conduct depositions and serve discovery requests he claims will help the court determine whether to grant Sig Sauer's motion. D.E. 25. For the reasons discussed below, the undersigned will allow Williams to serve some—but not all—of his jurisdictional discovery requests.

**I.    Background**

      Williams, an Ohio resident living in Kentucky, was on vacation in North Carolina in May 2019. D.E. 16. As he sat on his parked motorcycle, his Sig Sauer firearm unexpectedly discharged. *Id.* Williams bought the gun in Ohio in either 2018 or 2019. *See* D.E. 22, 22–1. It was manufactured in New Hampshire. D.E. 22–1. The bullet struck Williams in the leg, and he underwent emergency surgery and spent five days in the hospital. D.E. 16.

      Williams filed his original complaint in May 2022, alleging that a design defect in both the gun and its holster (which Sig Sauer did not manufacture) caused the unprompted discharge. D.E.

1. Sig Sauer, a Delaware corporation with its principal place of business in New Hampshire, moved to dismiss Williams's claim against it in July, contending that this court lacks personal jurisdiction over it. D.E. 14, 22–1. Later that month, Williams filed an amended complaint (D.E. 16), and Sig Sauer followed that up with a new motion to dismiss for lack of personal jurisdiction (D.E. 21) in early August.[1]

Williams now asks that the court order Sig Sauer to participate in limited jurisdictional discovery about its contacts with North Carolina. D.E. 25. The jurisdictional discovery is necessary, Williams suggests, to establish that Sig Sauer's contacts with North Carolina are sufficient to invoke personal jurisdiction over it. D.E. 26. Williams argues that the Supreme Court's recent decision in *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), provides a blueprint for establishing personal jurisdiction in this case. He also requests more time to respond to Sig Sauer's motion to dismiss. D.E. 25.

In response, Sig Sauer contends that Williams conflates general and specific personal jurisdiction and fails to allege that his injury "arises out of" Sig Sauer's contacts with North Carolina.[2] D.E. 31 (citation omitted). Although it maintains a network of authorized dealers in North Carolina, Sig Sauer claims that it has only tenuous connections with the state; none of those

---

[1] Williams also filed a handful of motions targeting Sig Sauer's two motions to dismiss, most of which this court denied. D.E. 30.

[2] Courts recognize two different types of personal jurisdiction: general and specific. General personal jurisdiction, which allows a court in a forum state to hear any claim against a corporate defendant, requires that the defendant maintain "continuous and systemic" contacts with the state. *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 416 (1984). Specific personal jurisdiction, by contrast, "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024. For a court to assert specific personal jurisdiction over a defendant, two requirements must be satisfied. First, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State[.]" *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1984) (citation omitted). Second, the plaintiff's claim "must arise out of or relate to the defendant's contacts" with the state. *Bristol-Myers Squibb Co.* v. *Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citation omitted). Williams claims that the court has specific personal jurisdiction over Sig Sauer. *See* D.E. 26.

connections directly caused Williams's injury. *Id.* Further, Sig Sauer denies marketing the type of pistol Williams bought to residents of North Carolina. *Id.*

**II.     Discussion**

Typically, the Federal Rules of Civil Procedure prohibit parties from conducting discovery before their Rule 26(f) conference. Fed. R. Civ. P. 26(d). When a party challenges personal jurisdiction, however, the "court may compel discovery to aid its resolution of" that narrow issue. *Cent. Wesleyan Coll.* v. *W.R. Grace & Co.*, 143 F.R.D. 628, 644 (D.S.C. 1992) (citation omitted). So long as a plaintiff's claim is not facially frivolous, courts routinely allow jurisdictional discovery to aid the plaintiff in establishing the court's personal jurisdiction over the defendant. *Id.*; *see also Trudell Med. Int'l* v. *D R Burton Healthcare, LLC*, No. 4:18-CV-9-BO, 2021 WL 684200, at *2 (E.D.N.C. Feb. 22, 2021); *Yacht Basin Provision Co.* v. *Hot Fish Club, LLC*, No. 7:21-CV-117-FL, 2021 WL 6493858, at *3 (E.D.N.C. Dec. 13, 2021).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing of personal jurisdiction. *See, e.g.*, *Grayson* v. *Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The Fourth Circuit has, however, repeatedly expressed its preference that courts develop a fuller evidentiary record before trial when the existence of personal jurisdiction turns on a factual dispute. *Id.* at 268; *Pandit* v. *Pandit*, 808 F. App'x 179, 183 (4th Cir. 2020) ("Jurisdictional discovery is proper when the plaintiff has alleged sufficient facts to suggest the possible existence of personal jurisdiction."); *Yacht Basin Provision Co.*, 2021 WL 6493858, at *2 (synthesizing cases). To accomplish this, the Fourth Circuit urges courts to "consider jurisdictional evidence in the form of depositions, interrogatory answers . . . or other appropriate forms." *Grayson*, 816 F.3d at 269. Thus, so long as Williams's insistence that the court has

3

personal jurisdiction over Sig Sauer isn't unreasonable, he is entitled to jurisdictional discovery to rebut Sig Sauer's motion to dismiss.

The Supreme Court recently clarified the scope of specific personal jurisdiction in multistate products liability cases. In *Ford Motor Co.*, the Court held that two state courts properly established personal jurisdiction over Ford Motor Company after a resident in each state was injured by a defective vehicle. Ford did not manufacture, design, or sell either defective car in the states where the plaintiffs were injured, though it did not contest that it did business in both states. *Id.* at 1023, 1025. Because neither plaintiff could establish a causal connection between Ford's actions in either state and the *specific* malfunctioning cars that caused the plaintiffs' injuries, Ford argued that the state courts lacked jurisdiction over it. *Id.* In short, under Ford's theory of personal jurisdiction, the defendant's connections to the state must somehow cause the plaintiff's injury. *Id.*

The Supreme Court rejected this argument. *Id.* at 1026–27. The Court noted that "[n]one of [its] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* at 1026. Instead, the Court held that several factors contributed to finding that Ford's connections with the two states were sufficiently related to plaintiffs' injuries to establish personal jurisdiction. *Id.* at 1028–30. The Court found that these factors were particularly relevant:

- The business that Ford regularly conducted in each state, including its distribution network and advertising efforts.
- Ford's sale of the defective car models in each state.
- Ford's ongoing connection with Ford owners and repair shops in each state.
- Ford's distribution of replacement parts to authorized dealers and independent auto shops in each state.

4

- States' significant interest in protecting their residents from harm at the hands of foreign corporations.

Taken together, these considerations provided enough for the Court to conclude that the state courts properly invoked specific personal jurisdiction over Ford. *Id.* at 1032.

Since *Ford Motor Co.*, at least two district courts have decided whether jurisdictional discovery is warranted in cases involving injuries from an allegedly defective handgun. In one case, the court denied a plaintiff's request for jurisdictional discovery because he completely failed to explain why the discovery he sought (data on the volume of an Italian weapons manufacturer's sales in Indiana) would affect the court's analysis. *Patterson* v. *Chiappa Firearms, USA, Ltd.*, No. 1:20-cv-01430-JPH-MG, 2021 WL 4287431, at *4 n.3 (S.D. Ind. Sept. 21, 2021).

In the other case, brought against Smith & Wesson for injuries a plaintiff sustained after his handgun discharged accidentally, the court allowed jurisdictional discovery. *Staggs* v. *Smith & Wesson*, No. 21–2535 (JEB), 2022 WL 2713277, at *7–8 (D.D.C. Feb. 14, 2022). The court held that jurisdictional discovery was necessary to determine "the extent to which Defendant targets the District" through "business plans, budgets, advertising, marketing, and sales[.]" *Id.* at *8 (internal quotation marks omitted). Such evidence, the court noted, would benefit it in determining whether it could properly invoke personal jurisdiction over the gun manufacturer. *Id.* Only after jurisdictional discovery was complete did the court feel comfortable granting Smith & Wesson's Rule 12(b)(2) motion. *Staggs* v. *Smith & Wesson*, No. 21–2535 (JEB), 2022 WL 2713277, at *3 (D.D.C. July 13, 2022).

Considering the Fourth Circuit's preference for fuller evidentiary records, the Supreme Court's recent holding in *Ford Motor Co.*, and the allegations in Williams's pleadings, jurisdictional discovery is warranted. Whether the court may assert specific personal jurisdiction

5

against Sig Sauer turns on a factual dispute—whether its North Carolina contacts related to Williams's injury are sufficiently strong to allow the court to exercise jurisdiction over it. The Fourth Circuit councils that, in ruling on Sig Sauer's motion to dismiss, the court should "consider jurisdictional evidence in the form of depositions, interrogatory answers . . . or other appropriate forms," *Grayson*, 816 F.3d at 269. Jurisdictional discovery is necessary to collect that evidence.

Further, Williams makes a plausible case for specific personal jurisdiction given the Supreme Court's reasoning in *Ford Motor Co*. Williams alleges that Sig Sauer maintains at least 51 licensed dealers within the state of North Carolina. D.E. 26. Sig Sauer has also allegedly supplied local law enforcement agencies with handguns—including the model that Williams owned—and offered training on their use. *Id.* Williams further contends that Sig Sauer touted its relationship with local law enforcement in marketing materials. *Id.* These allegations map well onto the factors the Supreme Court identified as important. *See Ford Motor Co.*, 141 S. Ct. at 128–30. The extent to which Sig Sauer targeted North Carolina through these and other efforts will determine whether the court can exercise personal jurisdiction over it. *See id.* Jurisdictional discovery will allow Williams and the court to assess the sufficiency of Sig Sauer's targeting efforts. *See Staggs*, 2022 WL 2713277, at *8.

Despite citing *Ford Motor Co.* in its response to Williams's motion, Sig Sauer advances a theory of personal jurisdiction inconsistent with the Court's ruling. Sig Sauer accuses Williams of "disregarding the necessary causal relationship needed between [Williams's] cause of action and Sig Sauer's contacts within the state." D.E. 31.

This is the exact argument the Supreme Court rejected little more than a year ago. "Ford's causation-only approach," the Court wrote, "finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Ford Motor Co.*, 141 S. Ct.

6

at 1026 (citation omitted). Instead, factors such as a defendant's regular business activities, marketing efforts, and ongoing relationships with consumers and distributors determine whether it may be haled into court. *Id.* at 1028–30. Sig Sauer's "causation-only approach," *id.* at 1026, opposing jurisdictional discovery holds no water.[3]

Sig Sauer also argues that Williams's proposed jurisdictional discovery requests—15 interrogatories and 17 requests for production—sweep too broadly. D.E. 31. The court agrees. While information about Sig Sauer's "business plans, budgets, advertising, marketing, and sales"[4] targeting North Carolina will aid the court in determining whether it may invoke personal jurisdiction, a handful of requests are overbroad, duplicative, or irrelevant.[5] Thus, the undersigned will allow Williams to serve some, but not all, of his jurisdictional discovery requests. Only requests that meaningfully bear upon the factors the Supreme Court identified in *Ford Motor Co.* will be allowed to proceed. The court finds that those requests are as follows:

- Interrogatories: 1, 3, 4, 6, 7, 10, 11, 12, 13, 14.

- Requests for Production: 1, 3, 6, 7, 9, 10, 11, 12, 13, 14.

---

[3] The *Ford Motor Co.* court also mentioned that personal jurisdiction over Ford was proper, in part, because states have an interest in protecting their own citizens from defective products manufactured by nonresident corporations. 141 S. Ct. at 1030. Williams is not a citizen of North Carolina, so that factor would not contribute to his argument that this court has personal jurisdiction over Sig Sauer. The importance of this difference between Williams's case and *Ford Motor Co.*, however, is a question for the court when it considers Sig Sauer's Rule 12(b)(2) motion—it does not influence whether jurisdictional discovery would be useful.
[4] *Staggs*, 2022 WL 2713277, at *8 (internal quotation marks omitted).
[5] Request for Production 5, for example, reads: "Produce all newsletters, solicitations, or other communications relating to, regarding, or arising out of any communications or other discussions between You and any third-party located or residing within the State of North Carolina, regarding the sale or distribution of Your handguns, including but not limited to the P320 model pistol, since 2014." This is overbroad and vague. Williams's other requests already ask for marketing materials, sales figures, vendor and customer contracts, invoices, and records of Sig Sauer employees traveling to North Carolina. Asking Sig Sauer to produce "all . . . communications relating to, regarding, or arising out of any communications . . ." is confusing. And, while other discovery requests are tailored to the handgun model Williams owned, this request demands information regarding all Sig Sauer firearms.

7

Case 4:22-cv-00048-D   Document 34   Filed 10/17/22   Page 7 of 8

### III. Conclusion

Jurisdictional discovery will aid the court in evaluating Sig Sauer's Rule 12(b)(2) motion to dismiss. For the reasons outlined above, the undersigned grants in part Williams's motion for extension of time and jurisdictional discovery (D.E. 25) and orders the following:

- Interrogatories 1, 3, 4, 6, 7, 10, 11, 12, 13, and 14 as well as requests for production 1, 3, 6, 7, 9, 10, 11, 12, 13, and 14 are deemed served as of the date this order issues.

- Sig Sauer will have 30 days from the date this order issues to answer the approved interrogatories and requests for production, though parties may agree to modify this deadline.

- No other jurisdictional discovery will be permitted without a court order or agreement of the parties.

- The court will hold a status conference approximately 45 days from the date this order issues to assess the status of jurisdictional discovery and establish future filing deadlines.

- Prior to the status conference, the parties will hold a meet and confer on the status of jurisdictional discovery.

Dated: October 17, 2022

_____
Robert T. Numbers, II
United States Magistrate Judge