**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JACK ANTHONY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 4:22-CV-48 |
| | ) | |
| SIG SAUER, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendant Sig Sauer, Inc. ("Sig") files this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, summary judgment should be entered on the entirety of Plaintiff's Complaint.

## I.  <u>INTRODUCTION</u>

As set forth in Sig's motions to preclude Plaintiff's liability experts, this Court should exclude the opinions of each expert. For the reasons set forth herein, this Court should then dismiss Plaintiff's Amended Complaint because he cannot proceed on any of his claims without expert testimony, nor can he establish causation. Even if this Court denies Sig's Rule 702 motions—which it should not—Sig is entitled to summary judgment on Plaintiff's design defect claims because they are barred by the Protection of Lawful Commerce in Arms Act. Moreover, Sig is entitled to summary judgment on Plaintiff's (1) failure to warn claim, (2) punitive damages claim; (3) North Carolina Unfair and Deceptive Trade Practices Act Claim, and (4) MMWA claim.

## II.  <u>STANDARD FOR SUMMARY JUDGMENT</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). ). The burden is on the moving party to show, through the pleadings, discovery, and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists

where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). "The 'genuineness' of an alleged fact issue must create fair doubt; wholly speculative assertions will not suffice." *Bell v. Holder*, No. 7:13-CV-20-FL, 2013 WL 5930429, at *3 (E.D.N.C. Nov. 4, 2013), *aff'd*, 571 F. App'x 228 (4th Cir. 2014) (citation and quotation omitted). The "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (emphasis added). A "mere scintilla of evidence" is not sufficient to defeat a motion for summary judgment. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Thus, a plaintiff cannot create a genuine issue of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985); *Ross v. Communications Satellite Co.*, 759 F.2d 355, 364 (4th Cir. 1985).

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of a material fact upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Indeed, the Court "has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). To establish a genuine issue of material fact for trial in a product liability defect case, a plaintiff must produce admissible expert evidence to support the *prima facie* elements of the case. To satisfy his burden of proof Plaintiff

"must offer 'legal evidence tending to establish beyond a mere speculation or conjecture every essential element' of [his] claims." *St. Clair v. General Motors Corp*., 10 F. Supp. 2d 523, 532 (M.D.N.C. 1998). To survive summary judgment, "the non-movant must bring forth 'fact-specific and not merely speculative' evidence establishing the cause of [his] injury." *Ross v. Fed.Deposit Insur. Corp.,* 625 F.3d 808, 817 (4th Cir.2010) (quoting *Driggers v. Sofamor, S.N.C.,* 44 F.Supp.2d 760, 765 (M.D.N.C.1998).

## III.    <u>ARGUMENT</u>

Plaintiff's claims should be dismissed because: (1) he has not adduced admissible expert evidence of a defect; (2) even if he could, he cannot establish causation; (3) all of Plaintiff's design defect claims are barred by the Protection of Lawful Commerce in Arms Act; (4) even if Plaintiff's experts are permitted to testify, any purported failure to warn on Sig's part did not cause proximately cause Plaintiff's injury; (5) Sig did not engage in any deceptive acts or practices in connection with the sale of the Subject P320; (6) the written affirmation language identified by Plaintiff is not an attempt to disclaim a warranty; and (7) presents no evidence to satisfy the high bar required to support his claim for punitive damages because Sig did not commit fraud or act with malicious intent, or conscious, intentional or reckless disregard for safety and rights of Plaintiff.

### A. **Plaintiff's design defect claims fail because he has not adduced admissible expert evidence of a defect or proximate causation.**

Plaintiff's design defect claims fail as a matter of law because he has not adduced competent expert testimony to support the essential elements of those claims, as required under North Carolina law. As discussed at length in Sig Sauer's motions to preclude the opinions and testimony of Whealton and Harrison, the proffered opinions of those putative experts, who are the only two experts Plaintiff has disclosed to opine on defect and causation, are inadmissible under

4

FED. R. EVID. 702, 402 and 403 as applied in *Daubert* and its progeny. If the Court grants those motions, Plaintiff cannot establish a genuine issue of material fact at trial and Sig will be entitled to judgment as a matter of law.

Plaintiff's design defect claims are asserted under theories of products liability (Count I), negligence/gross negligence (Count V), breach of express and implied warranty (Count VI), and negligent misrepresentation (Count X). Statement of Material Facts ("SOMF") at ¶ 15. Under the North Carolina Products Liability Act, specifically Sections 99B-6 and 99B-11, a product manufacturer can be liable for the inadequate design of a product if it "acted unreasonably in designing and formulating the product" and "that conduct was a proximate cause of the harm for which damages are sought." N.C.G.S. § 99B-6(a). Because Plaintiff's claim in this case is based on the allegedly defective design of a firearm, he must also establish four essential elements: (1) that the P320 was defective at the time that it left the control of Sig; (2) that the defect was the result of Sig's negligence; (3) that the "actual design of the P320 was defective causing it not to function in a manner reasonably expected by Plaintiff, as an ordinary consumer; and (4) that the defective design proximately cause Plaintiff's injuries. N.C.G.S. § 99B-6(a). Moreover, all of Plaintiff's claims based on design defect, regardless of the particular theory of liability, require Plaintiff to establish two fundamental elements—that the actual design of the P320 was defective, and the defective design proximately caused Plaintiff's injuries. Because Plaintiff has no admissible expert testimony to support the existence of a defect or causation, all of his claims must be dismissed.

### 1. Plaintiff has no admissible expert evidence of a defect in the P320.

North Carolina courts uniformly rule that competent, non-conclusory expert testimony is needed for a plaintiff to establish the *prima facie* elements of a claim in cases involving design issues when the issues involved in establishing the essential elements of a plaintiff's claims are

outside the common knowledge of laymen. *See Richardson v. General Motors Corp.*, 223 F. Supp. 2d 753, 756 (M.D.N.C. 2002) (plaintiff must adduce expert testimony on defect and causation in case alleging defective automobile design); *Ward v. American Medical Systems, Inc.*, 170 F. Supp. 2d 594, 599 (W.D.N.C. 2001) (plaintiff must produce expert testimony on both defect and causation in case involving penile prosthesis). Here, Plaintiff must support his claims with expert testimony, as a reasonable juror cannot be expected to understand the intricacies of the functioning of the P320 pistol, including how it is designed and manufactured, without expert evidence.

To determine whether Plaintiff's P320 pistol is defective in design requires specialized knowledge and analysis of engineering and design principles as applied to firearms. Likewise, as discussed further below, even if plaintiff were to attempt to rely on a "malfunction" claim (akin to a *res ipsa loqitor* theory) to *infer* the existence of a defect, plaintiff must, at a minimum, still produce expert testimony on engineering and design principles to establish the appropriate standard of care from which the jury might determine whether Sig was negligent, and must satisfy a multi-factor test, which Plaintiff cannot do. *See Michael v. Huffman Oil Co., Inc.*, 190 N. C. App. 256, 271 (2008) (plaintiff's claims based upon alleged negligence of engineers failed in the absence of expert testimony on applicable standard of care).

Thus, Plaintiff must produce testimony of a competent expert to prove that the subject firearm was in a defective condition and that the defect caused his injuries. Plaintiff identified Harrison and Whealton as his sole liability experts to speak on these matters. As set forth in the accompanying motions to preclude their testimony, however, the evidence and opinions of Plaintiff's liability experts are not admissible. Without admissible expert testimony, Plaintiff cannot meet his burden and Sig is entitled to summary judgment.

### 2. Plaintiff cannot establish proximate causation as a matter of law.

Plaintiffs asserting claims based on design defect must prove that the defective condition of the product was a "legal" and proximate cause of the claimed injuries. *See DeWitt v. Eveready Battery Co., Inc*., 355 N.C. 672, 565 S.E.2d 140, 49 U.C.C. Rep. Serv. 2d 116 (2002); *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc*., 138 N.C. App. 70, 530 S.E.2d 321 (2000) (a plaintiff asserting a products liability claim grounded in negligence or warranty liability must establish that the alleged defect proximately caused damage to the plaintiff). Therefore, Plaintiff must produce evidence to prove that the subject firearm was in a defective condition ***and*** that said defect caused Plaintiff's injuries. To meet this burden, the plaintiff's evidence "'must indicate a reasonable scientific probability that the stated cause produced the stated result.'" *Hinson v. National Starch & Chemical Corp*., 99 N.C.App. 198, 202 (1990).

For the reasons discussed in Sig's accompanying motions, even if the opinions of Harrison and Whealton regarding alleged design defects were admissible, which they are not, their testimony is insufficient to establish causation for two principal reasons. First, these experts simply assume, with zero supporting scientific analysis or physical evidence, that their alleged defect theories actually manifested to cause Plaintiff's pistol to discharge without a trigger pull in this instance. Second, the experts failed to address, or, in some instances, even consider, the possibility that Plaintiff's discharge was the result of an alternative cause—most obviously, a trigger pull. Thus, even if any aspect of the experts' proffered testimony withstood *Daubert* scrutiny, which it does not, any testimony that the purported defects *caused* Plaintiff's injuries amounts to pure speculation and falls woefully short of establishing that essential element of Plaintiff's claims.

While a plaintiff may be able to proceed on a design defect claim based on breach of implied warranty without expert testimony or "direct" evidence of a design defect, he cannot do so where, as here, he fails to raise a genuine issue of material fact through circumstantial evidence.

7

*DeWitt v. Eveready Battery Co., Inc.*, 355 N.C. 672, 565 S.E.2d 140, 49 U.C.C. Rep. Serv. 2d 116 (2002); *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 530 S.E.2d 321 (2000). Similarly, a plaintiff may rely on circumstantial evidence to pursue a negligent design cause of action under certain instances; however, here, absent admissible expert testimony, Plaintiff cannot make the requisite showing of evidence sufficient to establish an inference of either defect or malfunction. *See Kehagias v. Glock, Inc., Prod. Liab. Rep.* (CCH) P 19174, 2013 WL 3783744 (M.D. N.C. 2013), *report and recommendation adopted*, 2013 WL 4456635 (M.D.N.C. 2013).

To determine whether Plaintiff has satisfied his burden to produce adequate circumstantial evidence to submit to a jury, courts apply a strict factor analysis, which considers the following: (1) the malfunction of the product; (2) expert testimony as to a possible cause or causes; (3) how soon the malfunction occurred after the plaintiff first obtained the product and other relevant history of the product, such as its age and prior usage by plaintiff and others, including evidence of misuse, abuse, or similar relevant treatment before it reached the defendant; (4) similar incidents, when accompanied by proof of substantially similar circumstances and reasonable proximity in time; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that such an accident would not occur absent a manufacturing defect. *See Red Hill Hosiery Mill, Inc*, 138 N.C.App. at 76–77.

Here, Plaintiff cannot come close to adducing circumstantial evidence sufficient to reach the jury. Indeed, none of the factors weigh in favor of Plaintiff. First, Plaintiff cannot establish that his P320 "malfunctioned" at all, and certainly not without expert testimony, as it is well known that pistols unintentionally discharge for reasons beyond product defect or malfunction—most notably, user error, carelessness, and improper training. Second, as discussed above, Plaintiff has no expert to provide admissible testimony on causation. Third, plaintiff purchased the subject

pistol used in 2018 in a private sale, not directly from the manufacturer, which increases the likelihood of intervening causes and thus weighs against Plaintiff. SOMF at ¶ 20. Fourth, Plaintiff cannot make the requisite showing that any of other alleged P320 incidents occurred under similar circumstances or that they were caused by the same defects alleged here. Indeed, Plaintiff's own experts cannot opine on what caused Plaintiff's pistol to discharge in this incident, much less in those other, unrelated incidents. On the fifth factor, Plaintiff has not and cannot eliminate other possible causes of the incident. See SOMF at ¶¶25-73. Finally, as noted above, Plaintiff cannot establish that this type of accident, an unintentional discharge, would not occur absent a manufacturing defect. Moreover, Plaintiff's own experts admitted that the pistol functioned as designed when inspected post-accident. *See id.*

In sum, Sig is entitled to summary judgment because Plaintiff cannot proceed on his design defect claims without expert testimony.

**B. Plaintiff's design defect claims are barred by the Protection of Lawful Commerce in Arms Act.**

Plaintiff's claims are barred by the Protection of Lawful Commerce in Arms Act ("PLCAA"). 15 U.S.C.A. § 7903. The Protection of Lawful Commerce in Arms Act (PLCAA) bars civil actions brought against firearms manufacturers "resulting from the criminal or unlawful misuse of a qualified product". 15 U.S.C.A. § 7903 (West). There is an exception to this bar when physical injuries result directly from a "defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, *except that where the discharge of the product was caused by a volitional act that constituted a criminal offense*". 15 U.S.C.A. § 7903(5)(a)(v) (West) (emphasis added).

At the time of his injury, Plaintiff was carrying his P320 pistol in a concealed manner in the back pocket of his jeans with his vest covering it. SOMF at ¶ 5. Yet, Plaintiff did not have a

license to carry a concealed weapon in North Carolina. *Id.* at ¶ 6. It is unlawful to carry a concealed weapon in North Carolina without a concealed carry permit. North Carolina General Statutes §14-269. Thus, Plaintiff's actions at the time of his injury were illegal.

Plaintiff's unlawful use of the P320 pistol by carrying it in a concealed manner without a permit caused Plaintiff's injury. Specifically, Plaintiff alleges that his P320 pistol discharged when he sat on it and "scooched" on his motorcycle. SOMF at ¶ 11. If his pistol were not illegally concealed in his back pocket, his discharge would not have occurred. Accordingly, because Plaintiff was in violation of this law at the time of his discharge, and because his pistol discharged as a result of his volitional act of unlawfully carrying the pistol concealed in his back pocket when he sat on his motorcycle, Plaintiff's claim is barred by the PLCAA. *See Ryan v. Hughes-Ortiz*, 81 Mass. App. Ct. 90, 101, 959 N.E.2d 1000, 1009 (2012) (PLCAA defect exception does not apply to volitional acts that constitute a criminal offense). Simply put, Plaintiff's accidental discharge would not have occurred if he had not chosen to illegally conceal his weapon in his back pocket.

Whether Plaintiff was charged with a crime for his unlawful act is immaterial. *See Travieso v. Glock Inc*., 526 F. Supp. 3d 533, 547 (D. Ariz. 2021) (application of PLCAA does not hinge on a state's discretionary choice to charge someone because that would be contrary to the purpose of the Act). Similarly, whether Plaintiff intended to fire the weapon while carrying it in an unlawful matter is likewise irrelevant. *See id.* at 548 ("act need not be 'intentional' to be 'volitional'"); *Adames v. Sheahan*, 233 Ill. 2d 276, 310, 909 N.E.2d 742, 761 (2009) (PLCAA does not require intent to violate the law). Plaintiff's ignorance of North Carolina's concealed carry laws does not change the volitional nature of his act, as he chose to carry concealed in North Carolina without checking the concealed carry laws, which was his obligation to do. North Carolina General Statutes §14-269.

Courts around the country have routinely held that unlawful use of a firearm falls within the PLCAA's exception to the design defect exception and bars product liability actions against gun manufacturers. *See Adams*, 909 N.E.2d 742*; Travieso*, 526 F. Supp. 3d 533*; Ryan*, 959 N.E.2d 1000; *Heikkila v Kahr Firearms Group*, (The possession of a weapon by a minor or someone with a felony conviction can be considered criminal or unlawful misuse).

In *Ryan*, an individual was putting his employer's Glock pistol back in its case when it accidentally discharged and struck the plaintiff's decedent, resulting in fatal injuries. *Ryan*, 959 N.E.2d 1000. The employee had a prior felony conviction which prohibited him from being in possession of a firearm. *Id.* The victim's estate brought a product liability claim against Glock, alleging that the gun was defective. *Id.* The court barred the plaintiff's claims under the PLCAA, finding that the employee's unlawful possession of the gun was a volitional act that constituted a criminal offense, and therefore the PLCAA's defect exception did not apply. *Id.* Analyzing the "criminal and unlawful misuse" element, the court found that because the action resulted from the employee's possession of the pistol and his possession of the handgun—however brief—was the volitional act that caused the injury. *Id.* Because the employee's prior felony conviction which made his possession of a firearm in Massachusetts illegal, his handling of the firearm constituted a criminal offense. *Id.* The shooter's criminal and unlawful misuse of the weapon barred the plaintiff's claim against the gun manufacturer under the PLCAA. *Id.*

The undisputed facts in this case fall clearly within the parameters of what Congress intended to prevent by enacting the PLCAA. No genuine issue of material fact exists, and SIG is entitled to summary judgment in its favor because Plaintiff's claims are barred by the PLCAA.

Moreover, only Plaintiff's design defect claims are required to fall under the product liability exception. Any of Plaintiff's claims outside of an alleged design defect, including claims

for failure to warn, are precluded under the PLCAA. *Travieso*, 526 F. Supp. 3d at 545 ("even if the 'product liability' exception allows Plaintiff's claim for design defect, it does not allow his claims of information defect or for inadequate warnings.").

### C. Plaintiff's failure to warn claim must be dismissed even if his liability experts are permitted to testify.

As discussed above, Plaintiff's failure to warn claim fails because he has no admissible expert evidence that a defect existed in his P320 or that such a defect caused his injuries and because they are precluded under the PLCAA. Even if he did have adequate evidence of a defect and causation, however, his failure to warn claim would still fail.

Plaintiff cannot prove that: (1) Sig Sauer acted unreasonably in failing to provide adequate warning or instruction; (2) the failure to provide adequate warning or instruction proximately caused Plaintiff's injury; and (3) either that (a) without the adequate warning or instruction, the pistol created an unreasonably dangerous condition that Sig Sauer knew or should have known posed a substantial risk to a foreseeable claimant, or (b) Sig Sauer became aware of or should have known that the Chamber posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action. N.C.G.S.A § 99B-5 (a).

As a threshold matter, there must be evidence that Plaintiff's injuries would not have occurred if particular warnings were provided. There is no such evidence here. Warnings for firearms are placed in an owner's manual, which Plaintiff did not read. SOMF at ¶23. The manuals were easily accessible on Sig's website before Plaintiff's incident, yet he did not attempt to access them by this means either. *Id.*

The undisputed evidence shows that Plaintiff would not have read any additional instructions or warnings. His failure to even read the instructions and warnings provided rebut any

presumption that he would have heeded any additional warnings. *See Rule v. Best Indus., Inc.*, 121 F.3d 700 (4th Cir. 1997) (granting summary judgment in favor of the manufacturer on a product liability failure to warn claim because it would not have mattered what the warnings said because the doctor failed to read the materials provided and the alleged lack of a warning was not a proximate cause of the injury). Plaintiff has not provided any evidence regarding what additional warnings he claims Sig should have provided. And, even if he had presented such evidence, Plaintiff's blatant disregard for the warnings and instructions divests Plaintiff of any evidence that he would have followed any additional warnings provided. Plaintiff's failure to warn claim must be dismissed.

**D. Plaintiff's Unfair and Deceptive Trade Practices Act ("UDTPA") also fails because Sig did not engage in any deceptive acts or practices in connection with the sale of the Subject P320.**

As discussed above, Plaintiff's UDTPA claim must fail because he has no admissible evidence that his P320 discharged without a trigger pull. Even if he did, however, his UDTPA claim would still fail because Sig did not engage in any "unfair methods of competition…or deceptive acts or practices" in connection with the sale of the subject P320. *See* N.C.G.S. § 75-1.1(a).

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citing *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991)). To state a claim based on alleged misrepresentations, Plaintiff similarly needs to establish proximate causation. *See Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88–89, 747 S.E.2d 220, 227 (2013) "Reliance, in turn, demands

evidence showing that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.")

Plaintiff's claims against Sig are simple, run-of-the-mill product liability claims—they do not rise above the level of negligence. For the reasons articulated in the foregoing sections, Plaintiff cannot establish the requisite causation to establish that his injury was proximately the result of discharge of his P320 without a trigger pull. Moreover, the general factual allegations in the rest of the amended complaint involving warranty claims cannot by themselves support a UDTPA claim. *See Blackman v. Boston Whaler, Inc.*, 649 F.Supp.3d 142, 156–57 (E.D.N.C., 2023). Accordingly, even if Plaintiff were able to show that his discharge occurred without the trigger being pulled – which he cannot – Plaintiff could not prevail on his claim as a matter of law because he has not shown that Sig engaged in any unfair or deceptive acts.

### E. Plaintiff's MMWA claim fails.

Plaintiff alleges that Sig Sauer violated the MMWA's prohibition on disclaiming implied warranties because it provided a written warranty statement that the P320 was "originally manufactured free of defects in material, workmanship, and mechanical function." SOMF at ¶ 1, 15. However, Plaintiff summarily alleges that Sig "attempted to disclaim implied warranties, in direct violation of § 2308(a) of the MMWA", but Plaintiff does not articulate what conduct Sig purportedly undertook to disclaim such implied warranties. *Id*. Therefore, Plaintiff's MMWA claim should fail because Plaintiff has not sufficiently alleged facts in support.

### F. Plaintiff is not entitled to punitive damages.

Plaintiff's punitive damages claim should be dismissed because he does not have sufficient evidence—or, indeed, any evidence at all—to justify imposition of this extreme remedy as a matter of law. Plaintiff has produced the reports of two liability experts. As articulated in the accompanying motions to exclude, while each of these experts hypothesize and theorize about

various alleged defects in the P320, they fail to provide any reliable opinion that any of these "defects" can, or in this case did, cause the pistol to discharge without a trigger pull. Indeed, although Plaintiff's putative experts speculate as to various, often conflicting "possibilities," none can opine on what caused the discharge in this case, nor do any of them adequately address, much less rule out, the most obvious cause—that Plaintiff's pistol discharged because the trigger was pulled, as it was designed to do. Thus, Plaintiff cannot establish that *any* defect in the P320 caused his incident, much less that Sig's conduct was willful, wanton or in reckless disregard for the safety of others, which is required to support an award of punitive damages.

### 1. Punitive damages are an extreme remedy.

Under North Carolina law, punitive damages may be imposed only to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts. N.C.G.S.A. § 1D-1. Punitive damages may be awarded only in cases where the plaintiff proves by clear and convincing evidence that the defendant is liable for compensatory damages and fraud, malice, or willful or wanton conduct was present and related to the injury. N.C.G.S.A. § 1D-15(a)-(b).

> Punitive damages are recoverable only in tort actions where there are allegations and proof of facts showing some aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and willful wrong, insult, indignity or a reckless or wanton disregard of plaintiff's rights. In order for a plaintiff to collect punitive damages there must be some additional element of asocial behavior which goes beyond the facts necessary to create a simple case of tort.

*Shugar v. Guill,* 51 N.C.App. 466, 469, 277 S.E.2d 126, 129, *modified and affirmed,* 304 N.C. 332, 283 S.E.2d 507 (1981).

"'Willful or wanton conduct' means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is

reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." *George v. Greyhound Lines, Inc.*, 210 N.C.App. 388, 708 S.E. 2d 201 (2011); N.C.G.S.A. § 1D-5(7) (2009). "An act is willful when there is a deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another." *Lashlee v. White Consol. Indus., Inc.*, 144 N.C.App. 684, 694, 548 S.E.2d 821, 827, *disc. review denied*, 354 N.C. 574, 559 S.E.2d 179 (2001). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Wagoner v. North Carolina Railroad Company,* 238 N.C. 162, 167, 77 S.E.2d 701, 705 (1953). Therefore, when a tort is committed through mere negligence, the injured party is limited to damages reflecting the actual injury received. Even gross negligence is not sufficient to support an award of punitive damages, some other aggravating factor must be present, namely willful or wanton conduct, malice, or fraud. *George v. Greyhound Lines, Inc.*, 210 N.C.App. 388, 708 S.E. 2d 201 (2011).

Willful or wanton conduct requires more than carelessness or recklessness. *Shaw v. Goodyear Tire & Rubber Co.,* 737 S.E.2d 168, 173 (N.C.App.2013). Rather, an award of punitive damages requires evidence of culpable conduct and a conscious or intentional disregard for the rights of others. Thus, the defendant's mental state and, specifically, its intention to cause harm or indifference to the possibility of harm, is an essential element for any claim for punitive damages.

### 2. Plaintiff presents no evidence to satisfy the high bar required to support a claim for punitive damages.

As the facts set forth above clearly demonstrate, Plaintiff has no evidence to support his claim that his P320 pistol was defective, let alone that Sig Sauer's conduct in designing, manufacturing, or selling the pistol was accompanied by any of the required, aggravating factors or state of mind to support a punitive damages award. Simply, punitive damages are not

recoverable against Sig Sauer because Plaintiff has not alleged, and cannot come close to showing by clear and convincing evidence, facts sufficient to constitute fraud or malice or willful or wanton conduct, as required by N.C. Gen. Stat. § 1D-15.

### 3. Plaintiff's allegations regarding other alleged incidents do not support a punitive damages award.

Sig Sauer anticipates that Plaintiff will rely heavily on the assertion that there have been allegedly similar incidents wherein P320 users experienced accidental discharges to support his claim for punitive damages. First, to the extent Plaintiff seeks to rely on both prior and subsequent incidents, evidence of incidents which occurred *after* Plaintiff's accident plainly has no relevance to a claim for punitive damages because they cannot establish that a manufacturer was aware of the dangerous condition of its product at the time of the plaintiff's injury and failed to act to lessen or eliminate the danger to the plaintiff. Moreover, any knowledge gained by a manufacturer from a subsequent occurrence cannot indicate a disregard for the safety of others. For this reason, even jurisdictions which allow into evidence other similar prior and subsequent incidents to prove that a product is dangerous or defective have held that subsequent incidents cannot be the basis for an award of punitive damages. *See, e.g., Bass v. Cincinnati, Inc.*, 180 Ill. App. 3d 1076, 1083–84 (1989).

As for prior incidents, this evidence is not admissible for any purpose unless Plaintiff first establishes: "(1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in the other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents." *Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 552 (E.D.N.C. 1995); *see also See Renfro Hosiery Mills Co. v. National Cash Register Co.,* 552 F.2d 1061, 1068–1069 (4th Cir.1977). Here, Plaintiff has not adduced any evidence to establish the substantial similarity, and thus, the admissibility, of any prior incident on which he relies.

To the extent Plaintiff suggests that the mere fact that other unintentional discharges occurred is enough to show "substantial similarity," regardless of the facts or circumstances of those other incidents, this single, purported "commonality" falls woefully short of the standard. There are multiple reasons why a pistol can discharge unintentionally—most prevalently an accidental trigger pull—which do *not* involve a product defect at all, much less the specific defects Plaintiff alleges were possible causes of *his* unintended discharge. Indeed, to the extent any information is known, these incidents involved different P320 pistols acquired under different circumstances, at different times and places, with discharges occurring under different conditions and handling circumstances and resulting in different injuries (or, in some cases, no injury). There can be no substantial similarity unless there is evidence that the other incident was caused by the same alleged defect at issue in the case.

Here, as articulated in the accompanying motions to exclude, Plaintiff's own experts do not even know what caused his pistol to discharge. Plaintiff has not adduced any evidence establishing that the alleged defects his experts identify are even capable of causing a discharge without a trigger pull in the real world, much less that they caused the discharge in this case, and they certainly cannot claim that these "defects" also caused the guns to discharge in each of these other, unrelated incidents. Simply, Plaintiff's suggestion that prior unintended discharge incidents somehow put Sig on notice of the alleged defects underlying his claims, thereby evidencing Sig's "reckless disregard" for consumers by failing to remedy these purported "defects," is preposterous. Because Plaintiff cannot lay the requisite foundation of relevance, he should not be permitted to introduce evidence of other alleged incidents for any purpose, and, in any event, none of these incidents comes close to justifying the extreme remedy of punitive damages.

**4. The record is devoid of any evidence that Sig Sauer recklessly disregarded consumer safety in designing the P320 pistol.**

Finally, to the extent Plaintiff seeks to rely on Sig Sauer's "design decisions" or manufacturing practices to show intentional or reckless conduct, this argument completely misses the mark. The evidence in the record is plainly insufficient to establish that the pistol was defectively designed or manufactured, let alone that Sig's conduct rose to the level of reckless disregard for consumer safety. Plaintiff's conclusory allegations that Sig knew the P320 posed a substantial risk of harm to users or that its conduct was "grossly egregious and wrongful" is wholly unsupported by any facts in the record. *See* Am. Compl. ¶¶ 160, 278. First, the P320 meets and exceeds all relevant safety regulations and industry standards, and there is no evidence here that warrants departing from the general rule that punitive damages are improper under those circumstances. *Hernandez v. Crown Equip. Corp.*, 92 F. Supp. 3d 1325, 1356 (M.D. Ga. 2015).

Further, the notion that Sig Sauer *should* have made design changes solely because it *could* have is a red herring that fundamentally ignores the actual considerations relevant to firearms design. While there is no dispute that Sig Sauer, a leading manufacturer of firearms, is capable of designing various features and making modifications to its weapons, that is irrelevant to the question of whether the pistol was unreasonably dangerous.

Manufacturers like Sig Sauer "clearly have to weigh the benefits of a particular design against the possibility that other risks might be increased." *Hernandez*, 92 F. Supp. 3d at 1357; *id.* at 1356 ("[f]inding engineers who disagree with Crown's choice in trading one danger for another is not enough" to support award of punitive damages); *see also Wasylow v. Glock, Inc.*, 975 F. Supp. 370, 379–80 (D. Mass. 1996) (rejecting design defect claim based on Glock pistol's failure to incorporate manual safety and recognizing that, while economically feasible, manual safety affects the "functional capability" and not just the safety of the product).

19

In sum, Plaintiff's suggestion that Sig Sauer's decision to equip the P320 with multiple internal safeties and no external safety reflects malicious intent or reckless disregard for safety is not only baseless, but counter to the overwhelming evidence in the record. Plaintiff has not and cannot produce any evidence to even suggest that Sig Sauer intended or desired to bring about Plaintiff's alleged injury or that Sig Sauer was recklessly indifferent to any alleged risk of harm to consumers. Because no reasonable trier of fact could conclude that the evidence in the record supports an award of punitive damages as a matter of law, Plaintiff's punitive damages claim should be dismissed.

## IV.    <u>CONCLUSION</u>

For the reasons stated herein and in Defendant's accompanying *Daubert* Motions, this Honorable Court should grant summary judgment in favor of Defendant SIG Sauer, Inc.

Respectfully submitted,

/s/ Kristen E. Dennison
Kristen E. Dennison Admitted pro hac vice
LITTLETON JOYCE UGHETTA & KELLY LLP
100 Matsonford Road, 4-520
4 Radnor Corporate Center, Suite 520
Radnor, PA 19087
Tel: (646) 708-4844
Fax: (484) 254-6221
kristen.dennison@littletonjoyce.com

*-and-*

Ericka A. Esposito Admitted pro hac vice
LITTLETON JOYCE UGHETTA & KELLY LLP
100 Matsonford Road, 4-520
4 Radnor Corporate Center, Suite 520
Radnor, PA 19087
Tel: (646) 708-4844
Fax: (484) 254-6221
ericka.esposito@littletonjoyce.com

*-and-*

Ashley K. Brathwaite N.C. Bar 33830
**ELLIS & WINTERS LLP**
4131 Parklake Avenue, Suite 400
Raleigh, NC 27612
Tel: (919) 573-1297
Fax: (919) 865-7010
ashley.brathwaite@elliswinters.com
*Local Civil Rule 83.1(d) Counsel*

*Counsel for Defendant Sig Sauer, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)</u>

I hereby certify that the foregoing brief complies with the word limitation in Local Civil Rule 7.2(f)(3)(A) because the word count, excluding those parts of the brief identified in Local Civil Rule 7.2(f)(1), does not exceed 8400 words. According to counsel's word processing software, the word count is 6458.

This the 17th day of October, 2024.

/s/ *Kristen E. Dennison*
Kristen E. Dennison

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **SIG SAUER, INC'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SIG SAUER, INC.'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

J. LAWSON HESTER
**CRANFILL SUMNER**
5420 Wade Park Boulevard, #300
Raleigh, North Carolina 27607
Email: lhester@cshlaw.com
*Attorney for Jack Anthony Williams*

DAVID M. FOTHERGILL
**MCANGUS GOUDELOCK & COURIE, PLLC**
4130 Parklake Avenue, Suite 550
Raleigh, North Carolina 27612
Mailing Address: Post Office Box 30516
Raleigh, North Carolina 27622
(919) 719-8200
david.fothergill@mgclaw.com
*Attorney for Wintrode Enterprises, Inc=*

This the 17th day of October, 2024.

/s/ *Kristen E. Dennison*
Kristen E. Dennison